UNITED STATES of America,
Appellee,

v.

Roswell William WIXOM, Appellant.

UNITED STATES of America,
Appellee,

v.

Robert Douglas BRITTON, Appellant.

UNITED STATES of America,
Appellee,

v.

George Leo COLEMAN, Appellant.

UNITED STATES of America,
Appellee,

v.

William Donald TURK, Appellant.

Nos. 71–1690, 71–1694, 71–1700, 71–1718.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1972.

Decided May 26, 1972.

David S. Lathrop, Omaha, Neb., for appellants.

William K. Schaphorst, U. S. Atty., Omaha, Neb., for appellee.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This appeal follows from our earlier vacation of convictions because of lack of probable cause on the defendants' arrests and the search incident to those arrests.[1] 429 F.2d 1327 (8 Cir. 1970). We remanded the case to the district court for an additional hearing on probable cause. We did so rather than ordering a complete new trial since the evidence on the motion to suppress was incomplete, lacking in foundation and the record demonstrated a probability that the government could produce additional testimony.[2]

The facts produced at the original hearing on the motion to suppress were fully developed in our original opinion. However, for the sake of clarity we shall repeat them here:

"The defendants were arrested in Omaha, Nebraska, on the morning of November 16, 1968, in possession of counterfeit $20 bills totalling approximately $80,000.

". . . Sometime prior to the arrest, Sgt. Perry of the Omaha Police Department had been told by a fellow police officer, Sgt. Gentleman, that there had been reports of Collins Radio Laboratory checks being passed in the Cedar Rapids, Iowa, area. Collins Radio Laboratory is located in Cedar Rapids. On October 24, 1968, an Omaha photo engraving company had reported to the police that the defendant Wixom, under what was later discovered to be a false identity, had brought to the company a Collins Radio check, and purchased a negative of the check with the amount and the name of the payee taped out. The following day Wixom was observed by Omaha police entering the photo engraving company; he was driven to and from the company by the defendant Coleman, who was known, at the time of the arrest, to be in the printing business. Surveillance of these defendants was reactivated on November 15, presumably because of the passing of Collins Radio checks in the Cedar Rapids area. Coleman was stopped in Omaha that day on the pretext that he was driving a stolen car. It was then observed by a police officer that Coleman had a green substance under his fingernails. He was immediately released and thereafter followed to the Town House Motel, Room 116. At approximately 1:00 o'clock in the afternoon the defendant Turk, known by local police to be a 'dangerous character,' arrived in a Buick convertible with an Iowa license

1. Defendants were convicted for possession of counterfeit notes of the United States with intent to defraud in violation of 18 U.S.C.A. § 472.

2. Defendants complained on oral argument that this court erred in remanding the case to allow additional evidence to be taken, citing Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Although the Supreme Court refused to follow this procedure in *Whiteley*, we do not read that case as barring this procedure in all instances. In any event, appellants in their present briefs did not preserve this point on appeal. They raised only two grounds on appeal: (1) Was the arrest lawful? (2) Did probable cause exist for the search and seizure without a warrant?

plate and was observed going into the same room. The registration of this car was traced to Lynn County, Iowa (of which Cedar Rapids is the county seat). The defendants Britton and Wixom were also observed entering Room 116. Britton resembled an individual wanted in Cedar Rapids. The police carried on the surveillance throughout the day and evening. During the day Coleman was observed carrying a light bar and later a machine (which was subsequently identified to be a photocopier) into the room. The evidence showed that later in the evening the officers conducting the surveillance could hear machinery running in the room.

"At 1:30 a. m. on the following morning, November 16, 1968, the four defendants emerged from the motel room carrying attache cases and suitcases to their cars. When they placed the cases in their two vehicles the officers conducting the surveillance became concerned over the defendants' impending departure. Without warrants the police drew their guns and placed the defendants under arrest. The defendant Turk was brought back to his car and asked what he had put in the trunk, which was still partially open. Turk denied ever having seen a black attache case within the trunk and volunteered to open it. When he did so, the officers observed that it was filled with counterfeit $20 bills in sheets, six to a sheet. The men were then again informed they were under arrest and taken to the Central Police Station. The government urges that the warrantless arrest and search were justified by the probable cause of the police to believe that the defendants were departing the scene with evidence relating to the printing of counterfeit checks." 429 F.2d at 1328–1329.

On the original record there existed no showing as to how the informant (Sgt. Gentleman) came by his knowledge that counterfeit Collins checks were being passed in the Cedar Rapids area. On this basis this court found there was insufficient evidence of probable cause to justify defendants' arrests. The requirements of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969), and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), dictate this essential proof. Since our original decision, Whiteley v. United States, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), has clearly demonstrated when probable cause is in issue that information supplied by one police officer to a second arresting officer must be buttressed with some of the underlying circumstances as to how the informant-officer came by this information.

On remand the trial court found that the government had established the reliability of its information. The district court reinstated the convictions. We agree that the additional evidence produced by the government satisfactorily supplements the original proof thereby justifying the warrantless arrest and search.

At the remand hearing the government called Dale Arnett, a detective from the Cedar Rapids Police Department. He testified that Sgt. Gentleman[3] of the Omaha Police Department contacted him by telephone on October 23, 1968, concerning the aforementioned Collins Radio payroll check which had been photocopied by defendant Wixom. On November 4, 1968, Officer Gentleman went to Cedar Rapids where he spent the day going through the police department's file on the Collins case, visiting local businesses where the counterfeit checks had been cashed and a bank where they had been processed.

A bank officer, James Corell, testified that in October and November 1968, some thirty-six counterfeit Collins checks had been detected. An official from Collins Radio also testified that he

---

3. Sgt. Gentleman died prior to the date of the supplemental hearing.

had reported to the Cedar Rapids Police Department that a number of counterfeit checks had been passed between November 1 and November 7, 1968.

We find these underlying circumstances establish that Sgt. Gentleman's knowledge and, thereby, the knowledge of the Omaha Police Department was sufficiently detailed and accurate to establish probable cause that a felony had been committed. The array of facts as noted in our previous opinion, that Wixom had obtained a photograph of a Collins check in a suspicious manner using a false identity, that his associate, Coleman, was a known printer, that on the day of the arrests, another associate and known police character, Turk, drove a car with Cedar Rapids area license plates, that these defendants were seen taking machinery into the motel room and that the machinery was heard operating late at night, together with those facts produced at the supplementary hearing reasonably served to justify the conclusion that defendants were probably involved in producing and issuing counterfeit checks.[4] The fact that the police had not yet obtained arrest warrants at 1:30 a. m. does not defeat the probable cause for the arrest which otherwise existed. These arrests took place outside the motel room. It has been generally held that there is no additional requirement of recourse to a warrant in making an arrest in a public place as long as an officer has probable cause to believe that a felony has been committed. Dorman v. United States, 140 U.S. App.D.C. 313, 435 F.2d 385, 389 (1970). More significantly, at the time of the arrest the defendants were fleeing in separate automobiles thus justifying immediate police action.

We would be presented with a far different situation had the officers simply entered the motel room, made arrests and searched the room. In McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), the officers did just that and notwithstanding the existence of probable cause that a felony was being committed, the search was held invalid. The Court reasoned that the officers had time to obtain a search warrant and the Fourth Amendment required them to do so. The Court emphasized that the officers were not faced with an emergency where the defendant was "fleeing or seeking to escape." Id. at 455, 69 S.Ct. 191. Herein lies the essential difference with the present facts which justified the immediate police action taken.

The judgments of convictions are affirmed.

---

4. Mr. Justice Rutledge's observations in Brinegar v. United States, 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), are appropriate:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" . . . Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."