UNITED STATES of America, Appellee,

v.

Michael Stanford SHAVERS, Appellant.

No. 75–1208.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Oct. 30, 1975.

Edward H. Renner, Clayton, Mo., for appellant.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is a direct appeal from Michael Shavers' conviction for attempted bank robbery with a dangerous weapon, in violation of 18 U.S.C. § 2113(a) and (d). We find that the record now before us does not show probable cause for Shavers' arrest. We reverse the conviction because of the admission of evidence prejudicial to the accused obtained by the police as a direct result of the apparently unlawful arrest.

The existing record discloses the following facts.

Shortly before 9 a. m. on January 28, 1975, in Pine Lawn, Missouri, Mr. Linde-

wirth, an officer of the Pine Lawn Bank and Trust Company, was transferring cash, checks and food stamps from the bank's drive-in facility to the main bank located nearby. He was accompanied by Mr. Geiben, a bank guard. Since it was raining, the guard preceded Mr. Lindewirth to the bank and held the door open so Lindewirth could sprint across the forty feet of parking lot which separated the two buildings without getting too wet. As Mr. Lindewirth ran toward the open door with the deposits in his arms and his head down so his glasses would not get wet, he saw two figures approach out of the corner of his eye and heard a man's voice demand the money. His momentum carried him on into the bank. Mr. Lindewirth could not identify or describe the would-be robbers; however, the bank guard, Mr. Geiben, who was holding the door, saw them approach and heard them demand the money. He was later able to describe Lindewirth's assailants to the police. Both were black men about 5'8" tall. One carried a revolver, and was dressed in a black felt hat and dark blue coat and trousers. Geiben estimated he was 26 years old. The other man was dressed in a tan jacket and cap and was 19 or 20. After Mr. Lindewirth ran into the bank, Mr. Geiben closed the door. The robbers fled, but no one saw in which direction. The police were called and Mr. Geiben described the two men to them.

Shavers was arrested a block from the bank approximately ten minutes after the crime by Officer Pirrone of the Upland Park Police Department. He had received a broadcast over his police radio which stated that two Negro males were wanted for attempted armed robbery. One was described as 5'8" with dark clothing and the other was described as 5'8" tall.[1] The policeman testified that he saw Shavers walking at a fast pace

and that his pants were wet and had pieces of grass sticking to them. At that point he arrested Shavers, handcuffed him and took him to the police station. Shavers was then dressed in a light suede jacket and cap. About three hours after his arrest he was given *Miranda* warnings and interrogated, and confessed involvement in the robbery attempt.

Officer Pirrone's arrest of Shavers was based on the following facts: 1) the radio broadcast stated that one suspect was a Negro male, 5'8" tall; Shavers is black and about 5'7"; 2) he was a block from the crime about ten minutes after it occurred; 3) he was walking fast; 4) his pants were wet and had grass on them. In our opinion these facts alone did not establish probable cause for arrest. The population of Pine Lawn was estimated at trial to be about 50% black, and a great number of men stand about 5'8" in height. There was no other distinctive characteristic attributed to the second suspect in the radio transmission. At 9 o'clock on any weekday morning, many individuals answering to the broadcast description could be found in a business district such as the one where Shavers was arrested. *United States v. Nicholas*, 448 F.2d 622, 625–626 (8th Cir. 1971) (black men in predominantly black area at "reasonable hour" did not give probable cause for investigatory stop). Nor is the accused's proximity to the crime a persuasive factor, since the record suggests that approximately ten minutes had elapsed between the robbery attempt and when he was arrested only a block from the bank. *See Holloway v. Wolff*, 482 F.2d 110, 115–116 (8th Cir. 1973) (presence at suspected criminal hangout not sufficient to justify arrest); *United States v. Strickler*, 490 F.2d 378, 380 (9th Cir. 1974) (proximity to scene of crime does not provide probable cause to

1. On direct examination Officer Pirrone testified that the broadcast had indicated the second suspect was wearing a light jacket. However, on cross-examination he was shown a transcript of the broadcast, which showed that no description of the clothing nor any estimate of the age of the second suspect was given over the radio. At that time Officer Pirrone stated that was basically the way he remembered the broadcast. Therefore it appears that the officer's initial recollection was erroneous.

arrest). Officer Pirrone testified that Shavers was not running, but was walking at a fast pace. Although it appears that it was not raining at the time of the arrest, the record is unclear as to whether further rain appeared imminent. If most pedestrians in the area were hurrying to avoid impending showers, Shavers' haste would not be particularly unusual. Furthermore, the policeman's testimony on this point was possibly contradicted by an apparently unbiased observer who saw the arrest. This witness stated that Shavers was walking down the sidewalk in no particular hurry when Officer Pirrone approached him and made the arrest. We cannot determine from this record whether Officer Pirrone's testimony that Shavers was walking rapidly referred to the few seconds just prior to the arrest or to when he first saw Shavers and before Shavers saw him. Finally, Shavers' wet and grass-covered trousers may be explained by the fact that it had been raining and the sidewalk was overgrown with grass and weeds. At any rate, the government did not show how grass on Shavers' pants cuffs is a fact which would tend to indicate that he had committed the crime. *United States v. Strickler, supra,* 490 F.2d at 380 ("ambiguous" conduct does not provide probable cause for arrest).

Taking all of the information and knowledge available to Officer Pirrone,

we conclude that Shavers was arrested on mere suspicion, in violation of the fourth amendment. *United States v. Nicholas, supra,* 448 F.2d at 625–626; *United States v. Bazinet,* 462 F.2d 982, 988–989 (8th Cir. 1972); *United States v. Burhannon,* 388 F.2d 961, 963 (7th Cir. 1968).

■ The Supreme Court has recently held that a confession made after an illegal arrest is not admissible merely because *Miranda* warnings were given before the statement was made. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The inquiry must be whether the confession was obtained by exploitation of an illegal arrest or was the product of the defendant's own free will. Here, as in *Brown,* the government did not sustain its burden of showing that the confession was not the fruit of the illegal prior arrest; therefore it should have been excluded. *Id.* at 604–605, 95 S.Ct. 2254.[2] Similarly, we find that the suede hat and coat worn by the defendant at the time of apprehension were the products of the apparently illegal arrest and inadmissible at trial.

Because the challenged confession and other evidence was clearly prejudicial to Shavers, we reverse the conviction, and remand for proceedings consistent with this opinion.[3]

2. The government, at oral argument, conceded that if the arrest was unlawful the confession should have been excluded under the rationale of *Brown.*

3. As our opinion indicates, the record is vague on many important details relating to the arrest and confession. To some extent this may be due to the failure of the defendant to challenge the arrest directly at the pretrial suppression hearing. Appellant challenged only the voluntariness of the confession. At oral argument, counsel for defendant presented to the court a transcript of radio conversations among police officers in three patrol cars, including Officer Pirrone and officers participating in the investigation, and the dispatcher at nearby police headquarters. Since this transcript is not in the record, we cannot rely upon it.

We have previously held that in special circumstances where the record is unclear and it

seems likely that additional relevant evidence is available, a conviction may be set aside and the case remanded for further proceedings including a new suppression hearing. *See Turk v. United States,* 429 F.2d 1327, 1332 & n.3 (8th Cir. 1970) (vacating conviction and remanding); *United States v. Wixom,* 460 F.2d 206 (8th Cir. 1972) (affirming reinstated conviction).

Because of the further possibility that the jury was prejudiced by seeing the defendant in handcuffs, we reverse the conviction rather than remanding solely for a new suppression hearing as in *Turk.* The government is free to retry Shavers. Prior to a new trial, the district court should reconsider the admissibility of the confession and other questioned evidence in light of whatever additional showing can be made by the government and appellant in determining whether probable cause existed for the arrest.