**UNITED STATES of America, Appellee,**

v.

**Miguel BAUTISTA and Tony Rodriguez Perez, Defendants,**

**Luis R. Minier–Contreras, Defendant–Appellant.**

**No. 983, Docket 93–1179.**

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1994.

Decided May 6, 1994.

Gail Jacobs, Great Neck, NY, for defendant-appellant.

Thomas M. Finnegan, Asst. U.S. Atty., S.D. New York, New York City (Mary Jo White, U.S. Atty., and Paul G. Gardephe, Asst. U.S. Atty., of counsel), for appellee.

Before: OAKES, KEARSE and CARDAMONE, Circuit Judges.

OAKES, Senior Circuit Judge:

Luis R. Minier–Contreras appeals from a judgment of the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, *Judge*, convicting him after a jury trial of the following crimes: (1) conspiring to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846 (1988 & Supp. IV 1992); (2) possessing cocaine with intent to distribute within 1,000 feet of a school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2 (1988); and (3) using a firearm in a drug trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c) (1988 & Supp. IV 1992). The district court sentenced Minier–Contreras to two concurrent 18–month sentences for the conspiracy and possession crimes and a 5–year sentence for the use of a firearm in a drug trafficking crime, to be served consecutive to the 18–month sentences. The court also sentenced Minier–Contreras to six years of supervised release following his incarcera-

tion.[1] Minier–Contreras appeals on the grounds of (1) improperly admitted pre-trial identification testimony and (2) prosecutorial misconduct.

I. Background

The investigation leading to Minier–Contreras's arrest, trial, and conviction began when a confidential informant (the "CI") informed Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Robert Berger that the CI had purchased cocaine on several occasions in apartment 4F at 1766 Amsterdam Avenue in Manhattan. Agent Berger instructed the CI to return to the apartment to attempt to purchase cocaine on January 23, 1992. Upon returning to the apartment, one of the suspects searched the CI for weapons and then directed him to wait in line behind other "customers." After gaining admission to apartment 4F, the CI attempted to purchase cocaine. Before the transaction could be consummated, however, an alarm sounded and the suspects picked up the money and cocaine and fled into nearby apartments 4R and 5F.[2]

After the CI reported this information, Agent Berger obtained a search warrant for apartments 4F, 4R, and 5F. Agent Berger then instructed the CI to return to apartment 4F and purchase cocaine on January 29, 1992. On that date, the CI purchased $30 worth of cocaine from two men in apartment 4F. After purchasing the cocaine, the CI reported that at least five men were involved in the transaction: one man patted him down on the fourth floor landing; another sat on a bannister on the fourth floor; still another stood in the doorway of the apartment holding a .38 caliber, silver-colored handgun; and two more men handled the drugs and cash inside apartment 4F. The CI described each of these men to Agent Berger.

Agent Berger instructed the CI and Officer Steven Johnson, of the New York City

---

1. The district court also sentenced Minier–Contreras to pay a mandatory $150 special assessment.

2. Each floor of the apartment building at 1766 Amsterdam Ave. has two apartments. Apartments designated "F" face the front of the build-

ing. Apartments designated "R" face the rear. Apartment 4F is on the fourth floor and faces the front of the building. Across the hall from 4F is apartment 4R which faces the rear of the building.

Housing Authority Police who was working under cover,[3] to go to the building's fourth floor and observe where people ran during the planned ATF raid. The CI and Johnson proceeded to apartment 4F. They were searched for weapons by a man on the landing just below the fourth floor. They then proceeded to the fourth floor, joining other "customers" in line. After a few minutes, the CI and Johnson signalled to Agent Berger that they were in position.

As the raid commenced, an alarm sounded inside apartment 4F. Johnson and the CI observed the "customers," who were waiting in line in the hallway, run downstairs while the suspects each ran to apartment 4R or 5F. Johnson and the CI observed Minier–Contreras run past them and throw a revolver into the building's garbage chute.[4] Johnson and the CI then followed the "customers" downstairs.

Agent Berger then executed the search warrants on apartments 4F, 4R, and 5F. No people were found in apartment 4F. However, the agents seized assorted narcotics paraphernalia and .477 grams of cocaine. Three men and a woman were found in apartment 4R. Four men and a woman were found in apartment 5F. All nine of these people were handcuffed and led to the common hallway. Johnson returned to the building's fourth floor and identified six of the men as having been involved in the narcotics operation. After these identifications by Johnson, all nine people were taken outside. One at a time, each person was brought to a car in which sat the CI. The CI was asked to view each to determine whether he or she was one of the people involved in the narcotics operation. The CI identified the same six men as had Johnson. Minier–Contreras was amongst those identified. The man who was not identified and the two women were immediately released. Five days later, Agent Berger presented the CI with a group of photo arrays. Again, the CI identified Minier–Contreras. The CI subsequently identified Minier–Contreras in court.

The district court conducted a pre-trial evidentiary hearing pursuant to *United States v. Wade,* 388 U.S. 218, 239–243, 87 S.Ct. 1926, 1939–41, 18 L.Ed.2d 1149 (1967), in which it determined that testimony concerning the pre-trial identifications was admissible. At trial, the jury heard testimony concerning the previous identifications.

Judgment was entered on March 10, 1993. Minier–Contreras filed a timely notice of appeal on March 15, 1993.

## II. Discussion

### A. Admissibility of Pre–Trial Identification Testimony

After conducting the pre-trial *Wade* hearing, the district court determined that the pre-trial identification in this case was admissible. We will reverse such a determination "only upon a showing of clear error." *United States v. Simmons,* 923 F.2d 934, 950 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *United States v. DiTommaso,* 817 F.2d 201, 213 (2d Cir. 1987).

Under Fed.R.Evid. 801(d)(1)(C), a prior identification is generally admissible. *See United States v. Owens,* 484 U.S. 554, 562–63, 108 S.Ct. 838, 844, 98 L.Ed.2d 951 (1988). We will exclude a pre-trial identification only if the procedure that produced the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *see also Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991). That is, we will exclude a pre-trial identification only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable. Even if the procedure was unnecessarily (or imper-

---

3. Johnson was promoted to Detective before the trial. Accordingly, Johnson was referred to at trial as Detective Johnson.

4. Agents later recovered the revolver from the bottom of the chute.

missibly)[5] suggestive, therefore, a district court may still admit the evidence "if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *Simmons*, 923 F.2d at 950; *see generally Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony").

■ Minier–Contreras argues that the pre-trial identification procedure was suggestive in that he was presented to the CI in handcuffs; at night; in the custody of police officers; with his face lit by flashlights; and in the presence of Johnson who, each time the CI identified a suspect, radioed to his fellow officers, "it's a hit." Minier–Contreras argues further, as he must, that the identification procedure was *unnecessarily* suggestive. *See United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir.1991) (whether identification procedure was unnecessarily suggestive depends on (1) suggestiveness of procedure and (2) necessity of procedure). Specifically, he argues that the identification by the CI was unnecessary because the suspects had already been identified by Johnson.

We find that the presentation of the suspects to the CI immediately following the raid was not unnecessarily suggestive. As Minier–Contreras's brief points out, "[a] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons." Minier–Contreras's Brief at 24. Indeed, this court has instructed law enforcement officials that where an officer has "or should have doubts whether a detained suspect is in fact the person sought, the officer must make 'immediate reasonable efforts to confirm the suspect's identity.'" *United States v. Valez*, 796 F.2d 24, 27 (2d Cir.1986) (quoting *United States v. Glover*, 725 F.2d 120, 123 (D.C.Cir.), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984)), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987).

In this case, presentation of the suspects to the CI for the purpose of identifying perpetrators and releasing innocent persons was necessary. The fact that Johnson had previously identified the suspects did not render subsequent identification by the CI unnecessary. Unlike Johnson, the CI had several previous opportunities to observe the suspects. Further, unlike Johnson, the CI had several opportunities to observe the suspects who were within apartment 4F. Johnson, by contrast, observed these suspects only as they ran from the apartment during the raid. Although it turned out that the CI had not seen Minier–Contreras on any of his earlier visits to apartment 4F, at the time of the raid the arresting officers could not have known with certainty that the CI had not observed Minier–Contreras on any of his earlier visits. Given the CI's additional opportunities to observe the suspects, presentation of all nine people to the CI was an "immediate reasonable effort[ ] to confirm the suspect's identity" that is required under the law of this circuit. Under the circumstances, therefore, the presentation of the suspects to the CI was necessary.[6]

The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights also did not render the pre-trial identification procedure unnecessarily suggestive. In this case, handcuffs, custody, and flashlights were all necessary incidents of an on-the-scene identification immediately following a nighttime narcotics raid. Because the on-the-scene identification was necessary to allow the officers to release the innocent, the incidents of that identification were also necessary. Similarly, an officer attending the identification must, in some way, signal his fellows whether a particular detainee has been identified as a suspect or not. Under the circumstances of this case, therefore, Johnson's statements made *after* the CI identified each suspect did not render the identification procedure unnecessarily suggestive.

---

5. "Impermissibly" and "unnecessarily" are, in this context, synonymous. *See United States ex rel. Pella v. Reid*, 527 F.2d 380, 383–84 n. 2 (2d Cir.1975).

6. Indeed, rather than excoriate the law enforcement officials involved for conducting an unduly suggestive procedure, one might commend them for their immediate efforts to ascertain and release innocent people.

Minier–Contreras also contends that a photo array that was shown to the CI prior to trial was impermissibly suggestive in that the photograph of Minier–Contreras was brighter and somewhat more close-up than the other five photographs in the array. We have examined the photo array at issue in this case. While it is true that the photograph of Minier–Contreras is slightly brighter and slightly more close-up than the others, we find that these differences did not render the array suggestive. Each photograph depicts a man in a frontal mug-shot. Each is in color. Each of the men depicted is of roughly the same age and coloring. Finally, each of the men depicted sports a moustache. The differences complained of by Minier–Contreras "would hardly suggest to an identifying witness that [the defendant] was more likely to be the culprit." *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir.1984); *see United States v. Magnotti*, 454 F.2d 1140, 1141–1142 (2d Cir.1972).

We find that the pre-trial identification procedure and the photo array were not unnecessarily suggestive.[7] We therefore affirm the district court's determination that the pre-trial identification testimony was admissible.

### B. Prosecutorial Error

Minier–Contreras also argues on appeal that prosecutorial misconduct deprived him of a fair trial. Specifically, Minier–Contreras argues that the prosecutor (1) during an adjournment in the evidentiary hearing, wrongly requested that a government witness re-investigate issues that had arisen during the hearing and (2) made improper and prejudicial statements during summation.

### 1. Prosecutorial Conduct during the Evidentiary Hearing

On June 23, 1992, the government called Agent Berger to testify at an evidentiary hearing to determine the admissibility of pre-trial identification testimony. Hearing testimony for that day ended after cross-examination of Agent Berger by Minier–Contreras. Cross-examination by counsel for the remaining two defendants was adjourned until June 25, 1992. On June 25, 1992, following cross-examination by the remaining defendants, Agent Berger testified on re-direct that during the two-day recess the prosecutor asked him to speak to Johnson to determine what, if any, conversations took place between Johnson and the CI during the time between the raid and the pre-trial identification. In addition, Agent Berger testified that the prosecutor also asked him to check the tint of the windows of the car from which the CI made the pre-trial identifications. He also testified as to the substance of his conversation with the CI and the results of his re-investigation of the car. Agent Berger was then cross-examined by defense counsel.

Minier–Contreras contends that this contact between the prosecutor and the witness during adjournment deprived him of his rights of due process, effective assistance of counsel, and confrontation of witnesses against him. The government "concedes that a prosecutor should not discuss a Government witness's testimony with that witness during a break in his cross-examination, even where a judge has not formally prohibited such communication." Government's Brief at 28. While the contact may well have been improper, it did not rise to the level of a constitutional violation or a violation that would in some way cause us to exercise our supervisory powers.[8] Here, the fact of the

---

7. Because we find that the pre-trial identification was not unnecessarily suggestive, we need not address the question whether the identification was reliable. *Brayboy v. Scully*, 695 F.2d 62, 65 (2d Cir.1982), *cert. denied*, 460 U.S. 1055, 103 S.Ct. 1505, 75 L.Ed.2d 934 (1983).

8. We might exercise our supervisory powers if we thought there were an ethical violation involved. But we are aware of nothing in the old Model Code of Professional Responsibility or the newer ABA Model Rules or the ABA Standards

Relating to the Administration of Criminal Justice that touches upon the issues here, other than general injunctions such as "[the prosecutor's] duty is to seek justice, not merely to convict," Model Code of Professional Responsibility, EC 7–13 (1981), "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate," Model Rules of Professional Conduct Rule 3.8 cmt. 1 (1983), or "[the prosecutor should strictly adhere] to codes of professionalism and ... manifest[] a professional attitude

contact was elicited by the prosecutor on redirect. After his testimony on re-direct, Agent Berger was subjected to further cross-examination by defense counsel. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) ("Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses"). This cross-examination elicited *no* evidence that the prosecutor improperly "coached" Agent Berger. Further, the defense could have requested that the district court instruct the witness to refrain from discussing the case with anyone during the recess. *See Perry v. Leeke,* 488 U.S. 272, 281–82, 109 S.Ct. 594, 600–01, 102 L.Ed.2d 624 (1989) ("Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections"); *see also* Fed.R.Evid. 615 (providing for the sequestration of witnesses but excepting parties who are natural persons, an officer or employee of a party not a natural person if he is designated as the party's representative, and persons whose presence is shown by a party to be essential). Given the relatively minor nature of the prosecutor's contact with the witness, the fact that the contact was elicited by the prosecutor on re-direct, the fact that the witness was subjected to cross-examination on the nature of the contact, and the failure of the defendant to request a *nondiscussion order,* we decline to find that the prosecutor's contact violated the Confrontation Clause, the Right to Counsel, or due process. *See United States v. DeJongh,* 937 F.2d 1, 3 (1st Cir.1991) ("We are aware of no rule or ethical principle, in the absence of a court order, that a prosecutor should refrain from conferring with a government witness *before the start of* cross-examination") (emphasis added); *see also United States v. Malik,* 800 F.2d 143, 149 (7th Cir. 1986) (recess conversation between prosecutor and government witness did not warrant reversal where that conversation was known to defense counsel, defense counsel had an opportunity to cross-examine the witness, and the prosecutor did no more than ask the witness if he wanted to correct anything in his testimony).

### 2. Prosecutorial Conduct during Summation

■ Minier–Contreras argues that the prosecutor argued facts not in evidence during his rebuttal summation. To prevail on this claim, Minier–Contreras must demonstrate (1) that the prosecutor's remarks were improper and (2) that the remarks, taken in the context of the entire trial, resulted in substantial prejudice. *United States v. LaMorte,* 950 F.2d 80, 83 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992); *United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir.1989) (citing *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985)), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *see also United States v. Myerson,* 18 F.3d 153, 161 (2d Cir.1994); *United States v. Rosa,* 17 F.3d 1531, 1548–49 (2d Cir.1994). Although the prosecutor did commit some errors during the course of summation, we find that these errors did not result in substantial prejudice to Minier–Contreras.

■ Three of the comments of which Minier–Contreras complains were not improper. First, Minier–Contreras argues that the following statement was improper: "[t]his case isn't about the two drug exhibits ... this conspiracy involved a lot more cocaine." Minier–Contreras contends that this statement argued facts not in evidence. Although only a small amount of cocaine was seized during the raid, the facts suggest that much more cocaine was involved. The CI had purchased cocaine at the apartment on more than one occasion. There was a line of "customers" waiting to enter the apartment. The defendants had an alarm system that enabled them to flee the apartment and gave them time to dispose of any cocaine. Certainly, the jury could infer from the evidence

toward the judge, opposing counsel, [and] witnesses...." ABA Standards Relating to the Administration of Criminal Justice Standard 3–5.2 (3d ed. 1992).

that "a lot more cocaine" was involved in the operation. *See generally United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992). Furthermore, counsel for a co-defendant had, during his summation, placed the quantity of cocaine involved in the operation in issue by characterizing the case as "garbage" because so little cocaine had been seized. The government is "ordinarily permitted to respond to arguments impugning the integrity of its case." *United States v. Bagaric*, 706 F.2d 42, 60 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983).

 Second, Minier–Contreras also questions the propriety of the following statement:

> The defense does not have a burden of proving anything to you but when they do make an argument to you ... you don't have to accept it. At that point they are obligated to come forward with evidence.

Minier–Contreras argues that this statement improperly shifted the burden of proof as to the elements of the offense to the defense. We find this argument unpersuasive. It is established that the government may comment on a defendant's failure to call witnesses to support his factual theories. *See, e.g., United States v. McDermott*, 918 F.2d 319, 328 (2d Cir.1990), *cert. denied*, 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991); *United States v. Gotchis*, 803 F.2d 74, 81 (2d Cir.1986). The government may not, however, go further and suggest that the defendant has the burden of producing evidence. *See, e.g., United States v. Parker*, 903 F.2d 91, 98 (2d Cir.) (prosecutor may not permissibly "suggest that the defendant has any burden of proof or any obligation to adduce any evidence whatever"), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). The challenged statement, although inapt, when considered in context would not have been understood by a reasonable jury as anything more than an argument that the jury need not believe uncorroborated defense theories.[9] Further, whatever ambiguity may have been caused by the remark with respect to the burden of proof was undoubtedly clarified by the district court's instruction that the government bore the burden of proof as to every element and that the burden never shifted to the defendants. *See McDermott*, 918 F.2d at 327 ("in light of the district court's curative instruction [on the burden of proof], we cannot deem that the remarks in question were anything other than harmless constitutional error") (citing *United States v. Hasting*, 461 U.S. 499, 507–12, 103 S.Ct. 1974, 1979–82, 76 L.Ed.2d 96 (1983)). Although prosecutors should avoid statements suggesting that the defense is "obligated" at any time "to come forward with evidence," we conclude that in this case the prosecutor's statement does not warrant reversal.

 Third, Minier–Contreras questions the propriety of this statement by the prosecutor to the jury: "[if you believe the defense attacks on the government witnesses] then acquit the defendants ... let them back on the street now." Minier–Contreras argues that this statement improperly disclosed the fact of his bail status. We find that a jury would not reasonably have inferred from such a statement that Minier–Contreras had been denied bail. *See United States v. Dyke*, 901 F.2d 285, 287 (2d Cir.1990) (rejecting an interpretation of a prosecutor's statement during summation that a jury could not reasonably have reached), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990). Accordingly, we reject Minier–Contreras's contention that this statement was improper.

 We agree with Minier–Contreras that two of the prosecutor's comments were improper. They did not, however, result in substantial prejudice. First, the prosecutor stated,

> The defense also points to supposed discrepancies in the testimony of the witnesses, but the discrepancies that they are pointing to, and I don't agree with all of them but I am not going—

This statement reflected the prosecutor's opinion of the defense's arguments. As such, it was improper. The statement did not prejudice Minier–Contreras, however. Defense counsel immediately objected to the

---

9. We find further support for this conclusion in the fact that defense counsel made no objection to this portion of the prosecutor's rebuttal summation.

statement. The district court sustained the objection. Although the district court did not then deliver a formal instruction to the jury to disregard the prosecutor's statement about his personal beliefs, the court did reprimand the prosecutor in the presence of the jury, commenting, "You don't want to talk about your personal beliefs." The prosecutor· immediately apologized and conformed the remainder of his rebuttal summation to the district court's ruling. In light of the district court's comments, the prosecutor's single reference to his personal beliefs, while improper, did not result in prejudice to Minier–Contreras. *See United States v. Resto*, 824 F.2d 210, 212 (2d Cir.1987) (prosecutor's references to defense counsel's "sleight-of-hand," etc., were improper but not so egregious as to warrant reversal in light of the district court's reprimand).

 Second, in discussing the CI's testimony the prosecutor stated that Agent Berger had arranged for uniformed police officers to enter the apartment building on January 23, 1992. This comment was improper because the government failed to elicit evidence that uniformed officers were involved in this earlier reconnaissance of the narcotics operation. It is unlikely, however, that this comment resulted in prejudice to Minier–Contreras. The jury was aware, for one thing, that an alarm sounded during this preliminary visit. The jury was further aware that the defendants fled in response to this alarm. The jury could reasonably infer that the alarm signalled the presence of police officers. Whether the officers were present in the apartment building in connection with the investigation of the defendants or on some other business would have made little difference to the look-out who sounded the alarm or to the defendants who fled in response to the alarm. Similarly, whether the look-out spotted uniformed officers or undercover officers or, indeed, whether the look-out simply mistakenly sounded the alarm also would have made little difference. The relevant evidence was that when an alarm sounded, the CI observed the defendants take the money and some cocaine and run to nearby apartments. This observation by the CI was the basis for Agent Berger securing a warrant to cover apartments 4R and 5F. It·would have made little difference

to the jury as to what precise event led the look-out to sound the alarm. Accordingly, we find that the prosecutor's comments did not result in substantial prejudice to Minier–Contreras.

Given the facts in evidence, the co-defendant's summation, and the broad latitude afforded parties in commenting on evidence during summation, we find that the prosecutor's errors have not " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *see also Simmons*, 923 F.2d at 954; *United States v. Nersesian*, 824 F.2d 1294, 1327 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987).

In conclusion, we find that the preliminary identification evidence was properly admitted. We also find that the prosecutor's conduct, to the extent it was improper, did not prejudice Minier–Contreras.

Judgment affirmed.