Jeffrey TOBIAS, Petitioner,

v.

Superintendent PORTUONDO,
Respondent.

No. 01–CV–6589.

United States District Court,
W.D. New York.

Aug. 26, 2004.

Jeffery Tobias, Romulus, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Petitioner, Jeffrey Tobias ("Tobias"), filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of felony murder and one count of robbery. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On New Year's Eve in 1992, Michael Weeks ("Weeks") was robbed and shot to death at the Motel 6 in Gates, New York.[1] That evening, Weeks had gone to visit his wife, Elaine Weeks ("Mrs. Weeks"), who was staying at the motel. While there, they encountered four men, including Tobias, who were part of a group with whom Weeks apparently had some sort of confrontation at a local store earlier in the day.

Mrs. Weeks testified that while she was showering, Tobias and his confederates entered the motel room and began roughing up her husband Michael Weeks. Michael Hill (described by Mrs. Weeks as dressed in denim) and Earl Williams (described by Mrs. Weeks as dressed in green) held Weeks against the wall at gunpoint and struck him in the face with a gun. Michael Hill and Earl Williams then took Weeks's money and jewelry. During the struggle, Dearco Hill (described by Mrs. Weeks as

---

1. The recitation of facts is taken from the transcript of Tobias's trial.

dressed in gold) stood nearby. Mrs. Weeks indicated that Tobias (described by Mrs. Weeks as dressed in a patchwork outfit) stood at the door, held it ajar, and wiped the door handle and door with a towel. After Weeks's was relieved of his money and jewelry, Dearco Hill left the room.

When Dearco Hill returned moments later, Mrs. Weeks noticed, for the first time, a bulge under his jacket. Dearco Hill approached Weeks and appeared to embrace him. At that moment, one or two gunshots were heard, and Weeks collapsed. Mrs. Weeks immediately fled from the room and ran down the stairs. As she reached a lower floor, she saw Tobias standing at the door. Mrs. Weeks related that he said to her, "Bitch, where do you think you're going?" and chased after her as she ran back in the direction of the room.

By chance, the police were responding on an unrelated call at the motel. As they pulled into the parking lot, they saw a grey Nissan pulling out of a parking space very quickly and Mrs. Weeks frantically motioning at the car from the motel lobby. Tobias was seen striding quickly away from the motel toward the grey Nissan, which he entered on the passenger side. The police gave chase and stopped the Nissan a short distance away. After spotting guns in the car on the passenger side, the police placed Tobias and the driver, Dearco Hill, under arrest. Both men were returned to the Motel 6 for show-ups, and Mrs. Weeks positively identified Tobias as the man holding the door during the crime and Dearco Hill as the shooter. At trial, Mrs. Weeks identified the defendants by their distinctive outfits.

Upon his arrest, Tobias was asked if he waived his *Miranda* rights. According to the police, Tobias replied, "Yeah, I didn't do it." Tobias later made oral and written statements to the police in which he admit-

ted associating at the motel with the men who had attacked Weeks. He claimed, however, that although he approached the room to investigate the commotion, he never actually entered the room.

Tobias was tried separately from his co-defendants in New York State Supreme Court (Monroe County) (Egan, J.). The defense theory of the case was that Tobias had come to Rochester to attend a reggae concert and was staying with his girlfriend and some friends at the Motel 6. His friend, Lenora Odom ("Odom"), testified that Tobias was standing out in the hallway when the scuffle in the Weeks's room was taking place; he apparently had his hand on the doorknob about to go in, but his girlfriend told him not to get involved. According to Odom, Tobias never entered the Weeks's room. Tobias, aware that there was trouble, allegedly ran from the motel along with the perpetrators after Weeks was shot, and inadvertently hopped into the getaway car in his haste to get away from the commotion. Tobias did not testify in his behalf at trial.

The jury returned a verdict convicting Tobias of felony murder and first degree robbery. Tobias received an indeterminate sentence of 25 years to life on the murder conviction and a concurrent sentence of 8½ to 25 years on the robbery conviction.

Through counsel, Tobias appealed his conviction to the Appellate Division, Fourth Department. Tobias filed a *pro se* supplemental brief expanding on his counsel's arguments in the appellate brief but raising no additional grounds for reversal. The Fourth Department unanimously affirmed his conviction on June 16, 2000. *People v. Tobias*, 273 A.D.2d 925, 711 N.Y.S.2d 652 (4th Dept.2000). Leave to appeal to the New York Court of Appeals was sought and denied with respect to all of the issues raised by Tobias and his

appellate counsel. *People v. Tobias*, 95 N.Y.2d 908, 716 N.Y.S.2d 649, 739 N.E.2d 1154 (2000).

This federal habeas petition followed. The Court notes that respondent makes no claim that Tobias has failed to exhaust state remedies, and all of Tobias's present claims appear to be properly exhausted. *See* 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

For the reasons set forth below, Tobias's § 2254 petition is denied.

## DISCUSSION

## I. Procedural Default

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas [review]," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations & internal quotations omitted); *see also, e.g., Schlup v. Delo*, 513 U.S. 298, 314–16, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "[I]n order to preclude federal review [under the adequate and independent state ground doctrine], the last state court to render judgment must 'clearly and expressly state [] that its judgment rest[ed] on a state procedural bar.'" *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996), *cert. denied*, 520 U.S. 1108, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997)).

## A. *Brady* claim

Tobias contends that the prosecutor violated his obligation to provide material, exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*"Brady"*), by failing to timely disclose Mrs. Weeks's grand jury testimony in which she stated that she was pushed by her husband's assailants against the motel room window during the incident. Tobias argues that this constitutes *Brady* material because, in his statements to the police, he mentioned hearing something strike the window of the motel room so forcefully that it sounded as if someone was coming through the window. At the time he allegedly heard this, Tobias claims that he was standing outside the motel with his friend, Lenora Odom, loading up a car. Odom testified at trial that Tobias remarked to her about the loud noise as they were standing together outside. Thus, Tobias argues, Mrs. Weeks's testimony on this issue, in conjunction with his statement, placed him outside the motel at the time of the shooting and thereby created an alibi defense. The prosecutor did not turn over Mrs. Weeks's grand jury testimony to the defense at the time the defense made its omnibus discovery demands, but he did provide the material to the defense prior to the commencement of trial.

On direct appeal, the Fourth Department held that "the contention of defendant that he was deprived of *Brady* material has not been preserved for our review, (*see, People v. Brahney*, 239 A.D.2d 930, 659 N.Y.S.2d 593 [ (4th Dept.) ], *lv. denied* 91 N.Y.2d 869, 668 N.Y.S.2d 567, 691 N.E.2d 639 [ (1997) ] ), and we decline to exercise our power to review it as a matter of discretion in the interest of justice." *People v. Tobias*, 273 A.D.2d at 926, 711 N.Y.S.2d 652 (some citations omitted). The Fourth Department did not consider

the *Brady* claim on the merits, but rather expressly relied on a state procedural rule as the basis for not ruling on the claim.

■ Under New York state law, if a defendant becomes aware of a potential *Brady* violation prior to the verdict in his criminal trial, he must preserve the issue by registering an objection in the trial court or attempting to use the belatedly disclosed evidence in some way at trial. *E.g., People v. Robinson,* 249 A.D.2d 333, 670 N.Y.S.2d 880 (2d Dept.1998) (citing New York Criminal Procedure Law ("C.P.L.") § 470.05(2)). The Appellate Division did not explicitly cite C.P.L. § 470.05(2),[2] the so-called "contemporaneous objection" rule, but the case on which it relied, *People v. Brahney,* in turn relied upon other cases citing C.P.L. § 470.05(2) for this proposition. Thus, New York courts routinely and regularly use the contemporaneous objection rule as a basis for denying as unpreserved *Brady* claims of which defendants became aware prior to their verdicts at trial.

■ In the present case, there has been a procedural bar since the Appellate Division "explicitly invoke[d] a state procedural bar rule as a separate basis for decision," *Harris v. Reed,* 489 U.S. at 264, 109 S.Ct. 1038. The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule is an adequate and independent state ground. *See, e.g., Fernandez v. Leonardo,* 931 F.2d 214, 216 (2d Cir.), *cert. denied,* 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485–92 (1986). The Appellate Division therefore was justified in relying on New York's contemporaneous objection rule to hold that Tobias's *Brady*

claim was not preserved for review. This procedurally defaulted claim can only be reviewed on federal habeas if Tobias makes an adequate showing of cause and prejudice. *See Coleman v. Thompson,* 501 U.S. 722, 748–49, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ Tobias alleges neither cause for, nor prejudice resulting from, the procedural default of the *Brady* claim, and the Court finds neither on the record before it. In any event, were the Court to rule on the merits of this claim, it would find no *Brady* violation because defense counsel received the evidence in time to use it effectively at trial. The Second Circuit "ha[s] have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial[.]" *United States v. Coppa,* 267 F.3d 132, 142 (2d Cir.2001) (citing *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001) ("It is not feasible or desirable to specify the extent or timing of [the] disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made."), and, *inter alia, United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 532 (4th Cir.1985) (same); *United States v. Starusko,* 729 F.2d 256, 262 (3d Cir.1984) (same); *United States v. Olson,* 697 F.2d 273, 275 (8th Cir.1983) (same); *United States v. Allain,* 671 F.2d 248, 255 (7th Cir.1982) (same); *United States v. Pollack,* 534 F.2d 964, 973 (D.C.Cir.1976) (same)). Defense counsel evidently received Mrs. Weeks's grand jury testimony in time to use it effectively because he cross-examined Mrs. Weeks concerning

---

**2.** C.P.L. § 470.05(2) provides in pertinent part that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial ... is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same...." N.Y.Crim. Proc. Law § 470.05(2).

her statements before that body. Defense therefore easily could have broached the topic of her being shoved against the window during the altercation. Because Tobias received the alleged *Brady* material in time to use it effectively at trial, should he have so chosen, there was no due process violation.

## II. Standard of Review

■ To prevail under 28 U.S.C. § 2254, as amended in 1996 by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[3]

## III. Merits of the Petition

### A. Erroneous admission of evidence regarding two guns which were not connected to the charged crime

Tobias asserts that the trial court improperly allowed introduction of evidence that two loaded guns were found on the floor of the car in which Tobias was apprehended. Because the ballistics evidence

indicated that neither of these guns was the murder weapon, and because Mrs. Weeks could not identify them as the guns wielded by her husband's assailants, Tobias contends that they were inadmissible and that they constituted uncharged crimes evidence which prejudiced him. On direct appeal, the Fourth Department summarily dismissed this claim as being without merit.

The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68, 112 S.Ct. 475. However, "[d]ue process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941) and citing *Spencer v. Texas*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)), *cert. denied*, 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). Thus, a petitioner may premise a claim for habeas relief upon the "introduction of unfairly prejudicial evidence[.]" *Id.* (citations and

---

**3.** Tobias asserts that because the state appellate court "neither mentioned or addressed three of petitioner's constitutional claims," this Court is required to review them under the less deferential, pre-AEDPA standard. Tobias points to the Appellate Division's blanket dismissal of three of his claims as "without merit." However, the Second Circuit clearly has stated that where, as here, "'there is no basis either in the history of the case or the opinion of the Appellate Division for be-

lieving' that the claim at issue 'was denied on procedural or any other nonsubstantive grounds,' a terse statement that 'remaining contentions are without merit' suffices to trigger AEDPA's heightened standard of review." *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001)). The Appellate Division's summary denial of Tobias's claims as "without merit" thus constitutes an "adjudication on the merits" for purposes of AEDPA.

quotations omitted). Nevertheless, not all erroneous admissions of such evidence are errors of constitutional dimension. A defendant does not suffer a due process violation as a result of the introduction of improper evidence against him unless the evidence " 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Id.* (quoting *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted in original).

■ To prove their case, the People had to show that Tobias shared the criminal intent to forcibly rob the victim by means of a deadly weapon. According to Tobias's version of events, he was simply a guest at the motel who, upon sensing trouble, jumped into the nearest car he could find to get away from the fracas. The evidence that this car, which Tobias allegedly chose at random, contained two loaded guns lying on the floor of the passenger side, in conjunction with the fact that Tobias was seated on the passenger side, thus became relevant to his knowledge about the robbery and his accessorial intent. In other words, the evidence of Tobias's proximity to two loaded guns was probative as to whether he was part of a group of armed men bent on forcibly robbing Weeks, or just a hapless bystander who unluckily jumped into the gunman's getaway car. Thus, it appears that the admission of this testimony was not contrary to New York state evidentiary law. *See People v. Santarelli,* 49 N.Y.2d 241, 247, 425 N.Y.S.2d 77, 401 N.E.2d 199 (1980) ("[W]here the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality, our cases have recognized that the probative value of the evidence justifies its admission, notwithstanding the potential for incidental prejudice.").

"Where a state court ruling was not erroneous under state law, a petitioner cannot establish a federal constitutional violation unless he challenges the constitutionality of the state law itself." *Smith v. Artus* 2004 WL 789769, at \*12 (S.D.N.Y. Apr.14, 2004) (citing *Hernandez v. Filion,* 2004 WL 286107, at \*10 (S.D.N.Y. Feb.13, 2004)) (holding that "the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional") (citations omitted)) (Report and Recommendation adopted by 2004 WL 555722 (S.D.N.Y. Mar.19, 2004)); *Davis v. Senkowski,* 1998 WL 812653, at \*7 (E.D.N.Y. Aug.6, 1998) (admission of evidence of defendant's prior bad acts to prove identity appropriate under state law and thus, admission did not violate the Constitution)). Tobias has articulated no challenge to the constitutionality of the underlying state evidentiary rule allowing the admission of uncharged crimes when they are probative of some element of the People's direct case. Thus, Tobias has not established any error of constitutional magnitude.

### B. Improper denial of suppression of identification evidence

■ Tobias asserts that because he was returned to the scene of the crime in a police car and was in handcuffs when viewed by Mrs. Weeks during the showup, her identification of him was unduly suggestive. On direct appeal, the Fourth Department held that the court properly denied the suppression motion because "[a]lthough defendant was identified while wearing handcuffs, the evidence supports the determination of the suppression court that the identification procedure was not unduly suggestive." *People v. Tobias,* 273 A.D.2d at 925, 711 N.Y.S.2d 652 (citations omitted).

The admission of identification testimony violates due process only when the

identification is " 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.' " *United States v. Bautista,* 23 F.3d 726, 729 (2d Cir.) (quoting *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)), *cert. denied,* 513 U.S. 862, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *see also Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In order to determine whether identification testimony is constitutionally valid, the court first must determine whether the procedure by which the initial identification was obtained was impermissibly suggestive. *Bautista,* 23 F.3d at 729–30. Even where the procedure is unnecessarily suggestive, the court must determine " 'if, when viewed in the totality of the circumstances, [the out-of-court identification] possesses sufficient indicia of reliability.' " *Id.* (quoting *United States v. Simmons,* 923 F.2d 934, 950 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991)); *see also Manson,* 432 U.S. at 114, 97 S.Ct. 2243 ("[R]eliability is the linchpin in demonstrating the admissibility of identification testimony[.]"). In the absence of either element, there is no constitutional error. *See Bautista,* 23 F.3d at 729–30.

■ The practice of showing a suspect singly to a witness for the purpose of identification shortly after a crime—commonly known as a "show-up"—is not inherently unconstitutional. To the contrary, the Second Circuit has held that, as opposed to police-arranged lineups, "prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trial is fresh.' " *United States ex rel. Cummings v. Zelker,* 455 F.2d 714, 716 (2d Cir.) (quoting *Bates v. United States,* 405 F.2d 1104, 1106 (D.C.Cir.1968)), *cert. denied,* 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972); ac-

cord *United States v. Bautista,* 23 F.3d at 730. Accordingly, "it is now settled law that prompt on-the-scene confrontation is 'consistent with good police work' and does not offend the principles established in [, *388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)].*" *Zelker, 455 F.2d at 716 (citing, [ ] inter alia, United States v. Sanchez, 422 F.2d 1198, 1200 (2d Cir.1970));* accord, e.g., *McCray v. Barkley,* 2004 WL 32931, *9 (S.D.N.Y. Jan.7, 2004).

■ Where, as here, the police are making a prompt and reasonable effort to identify the perpetrator, handcuffs and police custody are "necessary incidents of an on-the-scene identification" that do not "render the pre-trial identification procedure unnecessarily suggestive." *Bautista,* 23 F.3d at 730 (show-up not unnecessarily suggestive where defendant was presented to the witness "in handcuffs; at night; in the custody of police officers; with his face lit by flashlights; and in the presence of [an officer] who, each time [the witness] identified a suspect, radioed to his fellow officers, 'it's a hit' "); *see also United States v. Butler,* 970 F.2d 1017, 1021 (2d Cir.) (identification proper where suspects were brought to victim who was sitting in a police car), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992); *United States v. Sanchez,* 422 F.2d 1198, 1199–1200 (2d Cir.1970) (police drove suspects by witnesses at the scene of the crime); *United States v. Ortiz,* 2000 WL 37998, at *1 (S.D.N.Y. Jan.18, 2000) (defendants were in handcuffs, standing next to a marked police car, and accompanied by uniformed police officers); *Torrez v. Sabourin,* 2001 WL 401444, at *5 (S.D.N.Y. Apr.19, 2001) (identification not unduly suggestive where complainant identified defendant while he was on his hands and knees surrounded by police officers and patrol cars). Accordingly, Tobias's

claim that his identification procedure was unduly suggestive is denied.

### C. Improper preclusion of eyewitness's prior inconsistent statement

■ Tobias contends that the trial court erred in precluding defense counsel from introducing part of the grand jury minutes of Mrs. Weeks's testimony into evidence at trial. The Fourth Department held that the trial court did not abuse its discretion in refusing to introduce the actual transcript into evidence since "defense counsel was permitted to read into the record the witness's inconsistent statements to the Grand Jury and the witness admitted making those statements." *People v. Tobias,* 273 A.D.2d at 925–26, 711 N.Y.S.2d 652 (citations omitted).

■ Federal habeas corpus relief will not issue to remedy errors of state constitutional, statutory, or procedural law unless a federal constitutional issue is also presented. *See Estelle v. McGuire,* 502 U.S. at 67–68, 112 S.Ct. 475 (a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to reexamine state court determinations of state law). Thus, the Court is limited to considering whether the challenged ruling was an error of constitutional magnitude. In other words, to be cognizable on habeas review, the error must have deprived Tobias of a fundamentally fair trial. *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) (citing *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Alleged errors of state evidentiary law, such as the one presented here, rarely rise to this level.

At trial Mrs. Weeks testified that Tobias was the person who stopped her on the stairs and chased her back toward the motel room. On cross-examination, defense counsel brought to her attention that, in her grand jury testimony, she identified the man in denim (*i.e.,* Michael Hill) as the one who stopped her on the stairs. (It was established that Tobias was wearing a patchwork outfit that night.) Mrs. Weeks stated unequivocally that she had not made an error, that she had always recounted the story as she did at trial, and that the grand jury minutes must be wrong. Defense counsel had more than adequate opportunity to cross-examine Mrs. Weeks on this issue. Importantly, defense counsel was permitted to read the grand jury testimony into evidence. Thus, the jury was apprised that Mrs. Weeks had made these inconsistent statements. The admission of the transcripts would have been merely cumulative. The Court finds no error in the trial judge's ruling, much less error of constitutional magnitude.

### D. Improper denial of suppression of statements

■ Tobias claims that his statement to police should have been suppressed because some eight to ten hours passed between the time that he first was advised of his rights and the time that his oral statements were reduced to writing. The Fourth Department rejected this argument, finding that "[o]nce *Miranda* warnings are issued to an individual in police custody and that individual voluntarily and intelligently waives his rights, repeated warnings are not required as long as questioning occurs within a reasonable time and the custody has remained continuous." *People v. Tobias,* 273 A.D.2d at 925, 711 N.Y.S.2d 652 (citing *People v. Kemp,* 266 A.D.2d 887, 698 N.Y.S.2d 140 (4th Dept. 1999); *People v. Stanton,* 162 A.D.2d 987, 557 N.Y.S.2d 782 (4th Dept.1990)).

In order to obtain habeas relief based on this claim, Tobias must show that the "rea-

sonable time" rule enunciated in *People v. Kemp* and *People v. Stanton* constitutes "clearly established *Supreme Court* precedent," *Mask v. McGinnis*, 252 F.3d 85, 90 (2d Cir.2001) (emphasis in original), and that the Appellate Division interpreted the rule in a manner which was contrary to, or involved an unreasonable application of, such precedent, *see* 28 U.S.C. § 2254(d)(1). Tobias has not cited, and the Court has not found, any Supreme Court case holding that renewed *Miranda* warnings are required for a defendant in continuous custody after a "reasonable" period of time has passed. A number of courts, in fact, have held that the mere passage of time does not necessitate the issuance of renewed warnings to the defendant. *See, e.g., United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir.1995) (citing cases rejecting the need for renewed warnings "simply because some time has elapsed").

The Supreme Court has declared that a court should look to the "totality of the circumstances" to determine whether renewed warnings are necessary. *Wyrick v. Fields*, 459 U.S. 42, 47–48, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). In *Fields*, the defendant had voluntarily, knowingly and intelligently waived his Fifth Amendment right to have counsel present at his polygraph examination. Once the test concluded, the police continued to question the defendant about the results. The defendant moved to suppress his post-polygraph statements on the basis that he should have received renewed *Miranda* warnings. The Supreme Court disagreed, reasoning that the defendant "validly waived his right to have counsel present at 'post-test' questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.* at 47, 103 S.Ct. 394 (quoting *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).

Rather than focusing narrowly on the time that had elapsed, the Supreme Court evaluated the totality of the circumstances to determine whether renewed *Miranda* warnings were necessary.

Tobias's claim that he was entitled to new *Miranda* warnings at the time his statement was reduced to writing is without merit. The record indicates that Tobias was given *Miranda* warnings at 11:35 p.m. upon his initial apprehension by the police. When asked if he waived those rights, he stated, "Yeah, I didn't do it." Tobias was transported to the police station where he was placed in a room where he remained, alone, until 12:35 a.m. By Tobias's own account, a police officer inquired as to whether he needed to use the bathroom or wanted water at 1 a.m. and again at 2 a.m. At 4:25 a.m., Tobias was brought to a room to meet with an investigator. Tobias states in his petition that the investigator asked him if he had been given his *Miranda* warnings, and Tobias answered affirmatively. The investigator told him that those warnings still applied. Tobias then was interviewed for 25 minutes, and the investigator left at 5:10 a.m. The investigator returned at 7:30 a.m. and interviewed Tobias for another two hours. Tobias gave a written statement which he signed at 9:25 a.m.

Tobias does not contest that he understood his rights and voluntarily decided to waive them to talk to the police. Over the next eight to ten hours, Tobias remained at the police station where he periodically spoke to various officers. Tobias admits that he was offered water and the use of a bathroom during this period. He does not allege, nor is there any evidence to suggest, that he was subjected to intimidation or coercion. Tobias adduces no facts that his last conversation with the investigator, which culminated in his giving a written statement, was involuntary. In sum, Tobi-

as alleges no material change in the circumstances of his interrogation apart from the mere passage of time. The police were not required to renew Tobias's *Miranda* warnings solely because some eight hours had elapsed. This claim accordingly is denied.

### E. Erroneous jury instruction concerning the concept of accessorial intent

Tobias alleges that his due process rights were violated when the trial court refused to instruct the jury that an accomplice to a robbery must have the same *mens rea* as the principal. Tobias complains that the jury charge, as given, allowed the jury to conclude that the use of force by some of the perpetrators was a sufficient basis on which to find that all defendants were guilty, notwithstanding whether they shared the same specific intent that force be used. On direct appeal, the Fourth Department summarily denied this claim as being without merit.

At trial, the court charged the jury that with regard to both the first degree robbery and the felony murder counts, Tobias could be found to have acted either as a principal or an accomplice. The charge stated in relevant part as follows:

That brings us to Section 20.00. During the course of this trial evidence has been presented attempting to show that the Defendant performed certain acts and others who are not on trial at this trial performed certain acts. Nevertheless, the Defendant is still accused of committing the crimes charged. This is because the Defendant is not only accused of violation of the section of the Penal Law relating to the crime charged, the Defendant is also accused of violating Section 20.00 of the Penal Law.

Section 20.00 of the penal law provides as follows: When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct, when acting with the mental culpability required for the commission thereof, he solicit [*sic*], request [*sic*], commands, importunes—importunes mean [*sic*] requesting or intentionally aiding such person to engage in such conduct.

Therefore, because of Section 20.00 of the Penal Law, a Defendant may be convicted even though he did not physically commit such a crime or some of the acts constituting such crimes and even though such crimes or some of the acts constituting such a crime were committed by another person or persons.

Thus, under the law, it is not essential to a conviction that the Defendant must have participated in each and every one of the acts necessary to constitute a crime if he was acting in concert with another or others [*sic*] charged or uncharged, who individually and personally committed the crime or some of the acts constituting such a crime.

A person is guilty of a crime if he directly commits the act amounting to the crime or aids or abets in its commission. It does not matters [*sic*] whether he was present or absent. [*sic*] If he directly or indirectly commands or induces or procures or helps the other to commit the crime. [*sic*] It also makes no difference that one of the participants played a relatively unimportant part while others were more active and performed more important parts in the commission of the crime. Under those circumstances the act of one is the act of the other and all [*sic*] responsible for each others [*sic*] acts and for the consequences.

*However, in order for a Defendant to be held accountable for a crime committed by another or some of the acts constituting such a crime was [sic] committed*

*by another, it is necessary that the Defendant willfully associate himself in some way with the criminal venture. Mere physical presence, standing alone, is not enough. He must either participate in the criminal venture, assist in the criminal venture, or perform some act to make it successful. Participation is with the required mental culpability when the act is done voluntarily[,] personally [sic] and with the intent to bring about some result which the law forbids.*

Tr. at 1271–72 (emphasis supplied). Tobias principally complains about the italicized language, arguing that it led the jury to "believe that the use of force by some of those alleged to be in the motel room was sufficient to convict all the defendants, including Mr. Tobias despite there having been no evidence that he laid a hand on the victim." Petitioner's Memorandum of Law (Docket # 11) at 23.

On habeas review, convictions are rarely overturned on the basis that the trial court issued an erroneous jury instruction. The habeas court must ask "whether the ailing instruction by itself so affected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *accord, e.g., DelValle v. Armstrong,* 306 F.3d 1197, 1200–01 (2d Cir. 2002).

At the outset, the Court notes that the charge, as read, was not erroneous. Furthermore, upon consideration of the trial court's charge in its entirety concerning the requisite intent for a robbery conviction, the Court does not find that it deprived Tobias of a fundamentally fair trial. The trial judge stressed that it was necessary that Tobias willfully had associated himself in some way in the criminal venture, and that his participation must have been with the required mental culpability. *See* Tr. at 1272. The trial court also

charged the jury that robbery is a forcible stealing and that a person forcibly steals when "in the course of committing a larceny, he uses or threatened the immediate use of physical force ... or engage [sic] in other conduct which aids in the commission of the larceny." *Id.* at 1273. Tobias's concern that without the requested charge the jury might have found him guilty of felony murder and robbery under a theory of accessorial liability without finding that he shared the requisite intent to commit robbery was obviated by the court's recitation of Penal Law § 20.00, including the statement that acting in concert liability requires acting with the mental culpability required for the commission of the crime charged. Thus, the Court finds no due process violation inherent in the trial court's charge on accessorial intent. The state court's rejection of this claim as without merit was not contrary to, nor an unreasonable application of, Supreme Court precedent.

## F. Prosecutorial misconduct

Tobias contends that he was deprived of a fair trial by two comments during the prosecutor's summation which allegedly improperly shifted the burden of proof. In rejecting this claim, the Fourth Department stated as follows:

Defendant further contends that prosecutorial misconduct on summation deprived him of a fair trial. We disagree. By sustaining defense counsel's objection and giving a curative instruction, the court obviated any prejudice caused by comments of the prosecutor indicating that defendant had a burden of proof. To the extent that other comments by the prosecutor on summation were inappropriate, they were not so egregious as to deprive defendant of a fair trial.

*People v. Tobias,* 273 A.D.2d at 926, 711 N.Y.S.2d 652 (citations omitted).

It is well settled that, in order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (internal quotation marks and citation omitted). A constitutional violation will be found only when the prosecutor's remarks " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused 'substantial prejudice' to the defendant." *Id.* (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " *Floyd v. Meachum,* 907 F.2d 347, 355 (2d Cir.1990) (quoting *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982)).

The first instance of alleged misconduct occurred when the prosecutor asked rhetorically, "Did Mr. Damelio [defense counsel], through all the examination and preparation point out that fact? No. Did he ever raise that and proof [*sic* ] that? No." Tr. at 1224. Counsel objected on the basis that the defense "have nothing to prove here." *Id.* The trial court "reminded [the jury] the burden of proof is upon the People throughout and no burden of proof [*sic* ] on the defendant." *Id.*

■ Tobias is correct that it is improper for the prosecutor to make comments which attempt to shift, or have the effect of diluting, the state's burden of proof. The Court agrees with Tobias that the prosecutor's remark was inappropriate. However, any potential prejudice from this comment was blunted by the trial court's curative instruction that the defense had no duty to prove anything and that the burden of proof never shifts from the state.

■ Secondly, Tobias objects to the prosecutor's comment about the failure of Tobias's girlfriend, Wanda, to testify since she supposedly had relevant and material information. The prosecutor stated, "Is it unusual that Wanda, instead of Pookie[,] is not here? Pookie offered nothing. Wanda is the one the Defendant says he is with in the statement." Tr. at 1247. Defense counsel objected, stating that "[t]here is no burden upon the Defendant to produce any witnesses at trial." *Id.* The prosecutor responded that it was "[a] logical argument at the time and the information and according to the Defendant's only statement." *Id.* Again, the trial judge sustained the objection and instructed the jury to disregard the last argument. He reiterated that there was no burden on the defendant to produce any witness and that there was "no burden on them to explain why they did not produce any witnesses." *Id.* The court informed the jury that they were to "disregard that entirely." *Id.* When the prosecutor continued, he stated that he did not mean to shift the burden of proof.

As in the first instance, the trial judge took curative measures to mitigate any prejudice that may have been caused by the prosecutor's improper argument. Furthermore, the prosecutor's summation, as a whole, was not inflammatory or intemperate. The proof against Tobias was compelling enough that these two isolated remarks in an otherwise fair proceeding

did not deny Tobias of a fair trial. The Appellate Division's denial of Tobias's prosecutorial misconduct claim was neither contrary to, nor an unreasonable application of, clearly established federal precedent.

### G. Harsh and excessive sentence

Tobias contends that his sentence was harsh and excessive because he was a "peripheral" actor in the robbery and murder and had only "remote contact" to the crime. On direct appeal, the Fourth Department summarily denied his sentencing claim as being without merit.

■■■■■ A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *accord Ross v. Gavin*, 101 F.3d 687, 1996 WL 346669 (2d Cir.1996) (unpublished opinion).

■■■■ Tobias's sentence for second degree murder, a class A–I felony under state law, and first degree robbery, a class B felony, was within statutory limits, *see* N.Y. Penal Law § 70.00, and further review is therefore barred. Under the circumstances presented here, his aggregate sentence of 25 years to life in prison for convictions for second degree murder and first degree robbery was not excessive. Habeas relief is not warranted on this claim.

### CONCLUSION

For the reasons stated above, Jeffrey Tobias's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Tobias has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

IT IS SO ORDERED.